# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEWAYNE M. THOMAS, ) | |
| ) | |
| Plaintiff, ) | Case No. 06 C 3291 |
| ) | |
| v. ) | |
| ) | |
| ) | Judge John W. Darrah |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before this Court are cross-motions for summary judgment and Plaintiff's alternative Motion to Remand.

## BACKGROUND

In 1989, Plaintiff, Dewayne Thomas, injured his right shoulder when he received a gunshot wound to the neck. The damage included, but was not limited to, arterial trauma and left residual nerve damage. On September 15, 1992, a car struck Plaintiff from behind while he was riding his bicycle. Plaintiff was diagnosed with a possible shoulder dislocation, probable shoulder strain, and a potential small fracture. Plaintiff continued to work and also engaged in rehabilitation exercises. Plaintiff continued to complain of shoulder problems and underwent left shoulder surgery, involving the removal of loose body, on March 3, 1993. Plaintiff recuperated and was cleared to return to work with a fifty-pound lifting restriction in June 1993.

In April 1994, Plaintiff reported having dislocated both shoulders. On April 18, 1994, Plaintiff was examined by a doctor[1], who determined, amongst other things, that Plaintiff had up to a twenty percent reduced capacity in his ability to perform physical activities of daily living

---
[1] The name of the doctor could not be determined from the record.

but could lift up to twenty pounds repeatedly in a workweek. On April 22, 1994, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that he became disabled on September 15, 1992, due to joint dislocations and joint pain. Plaintiff's application and his subsequent request for reconsideration were denied. Plaintiff's request for a rehearing was granted.

On May 27, 1994, a Veterans' Administration physician released Plaintiff to light-duty work with no overhead lifting. On November 26, 1994, Plaintiff underwent a consultative examination with Dr. Patrick Murray. Dr. Murray noted recurrent bilateral shoulder dislocations, upper extremity pain syndromes, and possible right upper extremity thoracic outlet syndrome.

On May 15, 1996, Plaintiff was seen by Dr. P. Gourineni, a Veterans' Department physician, for right shoulder pain. Plaintiff underwent right shoulder stabilization surgery on July 31, 1996, and was off work until further notice. Plaintiff was subsequently scheduled to receive left shoulder stabilization surgery, which would require post-surgical physical therapy and re-evaluation after three months. However, though Plaintiff was admitted for surgery on December 19, 1996, his pulse could not be maintained; and the surgery was cancelled.

In May 1994 and December 1996, Dr. Virgilio Pilapil, a state agency physician, reviewed the medical evidence of record and concluded that Plaintiff retained the ability to perform light exertional activities, with limitations on occasional climbing and reaching above shoulder level with his right upper extremity.

In March 1998, Administrative Law Judge James E. Lanter issued a decision that Plaintiff was disabled but only during the period from March 24, 1994, to July 1, 1996. Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council. Subsequently, the

2

Appeals Council granted Plaintiff's request for review and remanded the matter to the ALJ for additional medical review and a new hearing.

In August 2002, Plaintiff was examined by Dr. Bernard Z. Albina at the request of the agency. It was noted that Plaintiff was 5'7" and weighed one hundred and thirty-five pounds, his gait was normal, he was able to walk on his tiptoes and on his heels, and he had good coordination and grip strength in both hands. Dr. Albina documented a history of shoulder dislocations for twelve years. Plaintiff complained of three right shoulder dislocations and five left shoulder dislocations within the past year. Plaintiff also complained of tenderness on the anterior chest wall where he can feel pins or wire as a result of a previous surgery that he underwent subsequent to his gunshot wound. Dr. Albina also documented findings compatible with recurrent dislocations in both shoulders and symptomatic loose wire over the sternum, anticipating that surgery would be necessary for all three conditions within the next twelve months. Dr. Albina concluded that Plaintiff was not limited in handling but was limited in reaching with both shoulders.

On January 9, 2003, at the administrative remand hearing, Plaintiff, along with

Dr. George Nelson Weilipp, a medical expert, and Charles R. Poor, a vocational expert, testified. Plaintiff amended the alleged onset date of his disability to November 1, 2000.

Dr. Weilipp testified that, by performing heavy work for two years, Plaintiff re-damaged his shoulders. Dr. Weilipp noted that Plaintiff's range of motion was functional below the shoulder level on both sides and even greater on the right side. Further, Plaintiff was likely capable of performing work at the light exertional level but with no overhead activities with his upper extremities and no pushing or pulling.

3

Poor, at the request of the ALJ, considered a hypothetical individual of Plaintiff's age, educational background and past work experience, who was limited to sedentary work or light exertional work with no overhead activities with his upper extremities and no pushing or pulling. Poor testified that within the light exertional range, there were jobs available, such as toll collector, cashier, and protective services worker, that could be performed. He also stated that other jobs, such as school crossing guard, retail store package checker, backdoor security man, and light office cleaner, were also applicable. Over five million of these type of jobs were available in the national economy, according to Poor.

Plaintiff testified that activities such as closing a door or moving too quickly cause dislocation of his shoulders. He further reported that he had worked until November 2000; but because his job required heavy lifting, he had to resign. However, he would have continued to work had the company had a lighter duty job available, which the Plaintiff requested. According to Plaintiff's testimony, his shoulders dislocate frequently when performing everyday activities, such as closing or opening doors. Additionally, when Plaintiff moves the wrong way, his chest hurts or his right hand may go numb. Plaintiff also testified that he was scheduled for chest surgery on February 14, 2003, and was also scheduled for subsequent additional shoulder surgery.

Administrative Law Judge Thomas G. Norman ("ALJ Norman") ruled that Plaintiff was not disabled. In making this decision, ALJ Norman considered the objective medical evidence of record, the testimony of the claimant and the medical expert, and the record as a whole.
ALJ Norman further stated that the Plaintiff has retained the requisite functional capacity to perform a restricted range of light work, consistent with Poor's testimony, limited to an inability to push or pull and perform repetitive overhead reaching. Additionally, ALJ Norman found the

4

Plaintiff's testimony to not be credible and not supportive of the objective medical evidence of record and the record as a whole. With regards to this credibility determination, specifically, ALJ Norman stated that "the claimant's testimony and statements of record [were not] supportive of the objective medical evidence and the record as a whole."

Plaintiff subsequently filed a request for Review of Hearing Decision with the Appeals Council, which was denied. On June 16, 2006, Plaintiff filed a Complaint, requesting review of the final determination pursuant to 42 U.S.C. § 405(g).

Plaintiff was thirty-eight years old at the time of the ALJ's decision. Plaintiff completed high school and served in the U.S. Army and U.S. Army Reserves; he received an honorable discharge on January 27, 1993.

## ANALYSIS

An ALJ's findings constitute the final decision of the Commissioner of the Social Security Administration if the Appeals Council finds no basis for further review. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (*Smith*). Under such circumstances, the decision of the ALJ is the decision reviewed by the district court. *Ears v. Secretary of the Dept. of Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). In this review, the district court examines the entire record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (*Powers*). The ALJ's decision will not be reversed if it is supported by substantial evidence, which is evidence "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*Perales*); *Powers*, 207 F.3d at 434.

In order to qualify for disability benefits, a claimant must be "disabled" under the Social Security Administration. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (*Briscoe*). The determination of whether a claimant suffers from a disability as defined in the Social Security Act is conducted through a five-step inquiry, evaluated in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

The claimant has the burden of proof for steps 1 through 4. The commissioner has the burden of proof for step 5. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (*Clifford*).

Plaintiff first argues that the ALJ failed to make specific findings in support of his credibility determination. An ALJ's determination or decision on credibility must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave the individual's statements and the reasons for that weight." SSR 96-7p. An ALJ's credibility determination must contain more explanation than a simple reference to the factors considered in making the determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (*Halter*). In *Halter*, an ALJ, in making a credibility determination, made reference to Plaintiff's inconsistent testimony; however, the ALJ erroneously failed to elaborate on the specifics of these inconsistencies. *Halter*, 245 F.3d at 887.

In the present case, ALJ Norman considered the credibility of the Plaintiff's testimony and statements of record. However, ALJ Norman found that the Plaintiff's testimony and statements were not credible and not supportive of the objective medical evidence of record and

6

the record as a whole. ALJ Norman further stated that the Plaintiff's prior work record, observations of treating physicians and other persons regarding the nature of Plaintiff's symptoms, the precipitating and aggravating factors, the use of medications and other treatment for relief of symptoms, the functional restrictions, and Plaintiff's daily activities were also taken into consideration in the evaluation of his credibility. Though, as Defendant illustrates, ALJ Norman gave lengthy consideration to the Plaintiff's overall claim, a specific, articulated basis for the credibility finding is lacking. ALJ Norman cited what was considered in determining Plaintiff's credibility; however, the necessary degree of specificity is lacking. The ALJ did not state what testimony of the Plaintiff was not credible and why this was the case, only that his testimony, as a whole, when taken into consideration with the record and the above-mentioned data, was not credible.

ALJ Norman's ruling in the present case is analogous to the remanded ruling in the *Halter* case. Both rulings stated what factors were taken into consideration in making the credibility determination; however, both rulings failed to contain the degree of specificity required by SSR 96-7p. Both rulings state what was generally taken into consideration, i.e. "medical evidence of record." But both rulings do not state with any precision or specificity just what within these broad categories was taken into consideration nor how or why this information was taken into consideration. *See Halter*, 245 F.3d at 887. Thus, ALJ Norman's credibility determination constitutes legal error.

The Plaintiff also argues that the ALJ failed to comply with SSR 00-4p, which requires the ALJ to determine whether the vocational expert's testimony is consistent with the *D.O.T.*[2] An ALJ has an affirmative duty to ascertain whether the vocational expert's testimony is

---

[2] U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991).

7

consistent with the *D.O.T. See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (*Prochaska*). However, an ALJ's failure to make such a determination is harmless if it does not affect the outcome of the case. *See e.g., Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006) ("in administrative as in judicial proceedings, errors if harmless do not require (or indeed permit) the reviewing court to upset the agency's decision."). A reviewing court may remand an ALJ's decision if it is not clear from the record whether the ALJ committed harmless error by failing to compare the testimony of a vocational expert to the *D.O.T. See Prochaska*, 454 F.3d at 736 (remanding case for determination of whether the ALJ had committed harmless error by failing to compare vocational expert's testimony to the *D.O.T.* in order to determine the presence of any inconsistencies).

In the present case, Defendant concedes that ALJ Norman erred by failing to compare Poor's testimony to the *D.O.T.* But Defendant argues that the *D.O.T.* and *S.C.O.*[3] job descriptions that establish the alleged conflicts are inapposite; thus, any error, even if present, is harmless. Specifically, Defendant argues that the jobs described by Poor would be within the ALJ's findings regarding Plaintiff's physical ability. Plaintiff argues that the positions identified by Poor all require frequent "fingering, handling, and reaching" and that these activities cannot be performed by the Plaintiff. ALJ Norman's findings do not preclude "fingering and handling" and only preclude repetitive overhead reaching and pushing or pulling  However, without addressing the pushing or pulling, Defendant cites nothing to indicate that the positions described by Poor do not require repetitive overhead reaching. In fact, however, some of the positions cited by Poor likely involve repetitive overhead reaching. For example, some cashier

---

[3] U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (4th ed).

8

positions require stocking of shelves.[4] It cannot be determined from the record whether the positions cited by Poor would require repeated overhead reaching. As in *Prochaska*, the record is unclear as to whether Poor's testimony was inconsistent with the *D.O.T.* Thus, also as in *Prochaska*, it cannot be determined whether ALJ Norman committed harmful error by failing to ascertain any inconsistencies. The issue remains for further adjudication.

Plaintiff further argues that the ALJ erred in finding that Plaintiff could perform a significant number of jobs within the national economy. In light of the above findings, this argument need not be considered at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied. Plaintiff's alternate Motion to Remand is granted. The decision of the ALJ is vacated, and this proceeding is remanded for further proceedings consistent with this opinion.

Dated: March 22, 2007

JOHN W. DARRAH
United States District Court Judge

---

[4] *Supra* Note 2 at 183.